IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| SANDRA SALAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No: 3:21-cv-103 |
| | : | |
| WINNEBAGO INDUSTRIES, INC. | : | |
| | : | |
| **SERVE:** CT Corporation System | : | |
| 400 East Court Ave. | : | |
| Des Moines, Iowa 503069 | : | |
| | : | |
| and | : | |
| | : | |
| CAMPING WORLD RV SALES, LLC | : | |
| d/b/a MCGEORGE ROLLING HILLS | : | |
| | : | |
| **SERVE:** CT Corporation System | : | |
| 4701 Cox Rd Ste 285 | : | |
| Glen Allen, VA 23060 – 6808 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

COMES NOW the Plaintiff, Sandra Salan, by counsel, and hereby files this Complaint against the Defendants, based upon the following.

### PRELIMINARY STATEMENT

1.      This case involves claims asserted under the Virginia and/or the Iowa Uniform Commercial Code, the Magnuson Moss Warranty Act, and the Virginia Consumer Protection Act.

1

**PARTIES**

2.      Sandra Salan is a natural person domiciled and residing in and a citizen of Maryland and is a consumer and buyer within the meaning of applicable laws.

3.      Defendant, Winnebago Industries, Inc. ("Winnebago"), was at all times relevant a corporation doing business in Virginia and elsewhere and is the manufacturer of the subject RV that Plaintiff acquired from Defendant Camping World RV Sales LLC d/b/a McGeorge Rolling Hills (hereinafter "CW Ashland") located in Ashland, Virginia. Winnebago has its principal place of business in and is a citizen of Iowa and was, at all times relevant, engaged in the business of selling and servicing recreational motor vehicles through its authorized dealerships and agents, including CW Ashland that it maintains in Virginia and elsewhere.

4.      The Plaintiff acquired the subject RV from CW Ashland, which at all times relevant was a supplier, merchant and an authorized agent and representative of Winnebago in Virginia. Camping World RV Sales LLC is a foreign, limited liability company whose principal office is in Bowling Green, Kentucky but who does substantial business in the state of Virginia through it retail sales locations in Frederick County, Prince William County, Hanover County, Henrico County, Newport News, and Spotsylvania County, and including CW Ashland, in Hanover County. At all times relevant, CW Ashland was authorized by Winnebago to act for it as its authorized agent and representative in Virginia in all respects related to the sale of the vehicle involved in this case and the attempted performance of repair and service work upon the subject new Winnebago vehicle, and hundreds of other Winnebago products sold by CW Ashland.

2

5.     Upon information and belief, Plaintiff alleges that Defendants Winnebago and CW Ashland entered into a retail sales and service agreement whereby CW Ashland agreed to allow Winnebago to control its operations by contractual terms which required that:

a.     Winnebago would appoint Camping World RV Sales, LLC as its "authorized dealer" at various locations in Virginia, including CW Ashland;

b.     CW Ashland was one of Winnebago's select authorized retail sellers of Winnebago products in Virginia;

c.     CW Ashland would "work with" and coordinate with Winnebago to determine what product lines and stocking and sales quantity objectives would exist at CW Ashland and to complete a Winnebago "Stocking and Sales Objective" form agreement which would bind CW Ashland to meet the "objectives" or accept financial penalties from Winnebago;

d.     CW Ashland would work with Winnebago to meet the state regulatory requirements for CW Ashland and other dealers, including the provision by Winnebago and CW Ashland to jointly provide necessary documentation to show that it and any individual location was authorized to sell Winnebago's products;

e.     CW Ashland agree with Winnebago to allow Winnebago to control CW Ashland's available inventory of Winnebago products and to accept Winnebago's discretionary decision to allocate the Winnebago products that CW Ashland would be able to sell;

3

f.   CW Ashland would comply with Winnebago's "basic minimum inventory" of new Winnebago recreational vehicle stock requirements or accept financial penalties from Winnebago;

g.   CW Ashland would permit Winnebago to review the agreement with Camping World and CW Ashland annually;

h.   CW Ashland would accept changes which Winnebago would unilaterally make to the required Winnebago product inventory levels CW Ashland was required to maintain for retail sale or accept financial penalties from Winnebago;

i.   CW Ashland would not sell Winnebago products to a retail purchaser for export purposes or accept financial penalties from Winnebago;

j.   CW Ashland would allow Winnebago to unilaterally terminate the relationship with CW Ashland if CW Ashland did sell Winnebago products which the purchaser exported;

k.   CW Ashland would accept the "charge back" by Winnebago to CW Ashland for any "market support, sales incentives, or any further assistance programs" of Winnebago if CW Ashland submitted any warranty card to Winnebago which contained a foreign address on it;

l.   CW Ashland would reimburse Winnebago for any financial penalties or discount "reversals" incurred by Winnebago "for all unauthorized exports";

m.   CW Ashland would comply with Winnebago accounting practices;

n.   CW Ashland would submit annual financial statements to Winnebago;

4

o. CW Ashland would supply Winnebago any other "reports and records" which Winnebago might unilaterally request;

p. CW Ashland would maintain on its premises and in its inventory of stock the Winnebago "flooring standards[1]" as unilaterally dictated by Winnebago or accept financial penalties from Winnebago;

q. CW Ashland would maintain and keep available a minimum of two years of records that support the payments made by Winnebago to CW Ashland for warranty repairs and recalls that CW Ashland performs for and on behalf of Winnebago;

r. CW Ashland would permit Winnebago to make "at any time during regular business hours, examinations and audits and to reproduce and take copies, of any of the accounts and records" which Winnebago required CW Ashland to keep and maintain;

s. CW Ashland would accept the discontinuance, change, or replacement of any Winnebago product without notice and without choice;

t. CW Ashland would allow Winnebago to sell directly to any government or agency without exception, even if they are located within the marketing area of CW Ashland and even if prior sales occurred through CW Ashland;

u. CW Ashland would promote and sell and deliver to CW Ashland's "full potential" the retail sale and service of Winnebago products;

---

[1] "Flooring standards" are defined by Winnebago as the "flooring dollars dedicated to" Winnebago's products to meet Winnebago's minimum stock requirements imposed on CW Ashland.

5

v.      CW Ashland would conduct advertising of Winnebago products and participate in shows and exhibitions at the expense of CW Ashland;

w.      CW Ashland would maintain "a complete service shop" and offer service to all Winnebago product owners;

x.      CW Ashland would carry in stock an inventory of parts and accessories for Winnebago products in an amount that is dictated by Winnebago;

y.      CW Ashland would purchase and maintain "in first class condition" CW Ashland's tools and equipment including "a complete range of non-optional tools" which Winnebago may unilaterally require CW Ashland to have at CW Ashland's expense;

z.      CW Ashland would perform such pre-delivery service as Winnebago may unilaterally require in relation to the retail sale by CW Ashland of Winnebago products;

aa.     CW Ashland would make "post-delivery adjustments" on Winnebago products sold by CW Ashland, along with a large quantity of other terms and conditions on and business practices of how CW Ashland may operate its business, and by virtue of such, CW Ashland is the agent and/or general agent and/or agent with implied authority and/or agent with express authority and/or agent with apparent authority; and

bb.     CW Ashland would be controlled in numerous other manners.

6.      As this complaint is being filed, for at least ten years Winnebago has engaged in substantial business activities in the state of Virginia involving millions of dollars of goods and

6

services being advertised and sold in Virginia, both by shipping into this state and distributing in this state its new motor vehicles and by its continuing substantial business activity with its Virginia agents and dealers for them to perform warranty repair and service work in Virginia for and on Winnebago's behalf at Winnebago's authorized repair facilities located in Virginia, including but not limited to CW Ashland. In fact, as this Complaint is being filed, Camping World has about $4.8 million dollars' worth of Winnebago RV's which it is advertising for retail sale. In addition, upon information and belief, Camping World was paid over a million dollars for the warranty repairs performed for Winnebago last year.

7.      Presently CW Ashland alone has motor vehicles manufactured by Winnebago on its retail lots for sale, which Winnebago shipped to CW Ashland in Virginia for the purpose of advertising and selling the subject motor vehicle to the public in Virginia, and which have a total value of about $300,000. Winnebago has had a continuing business relationship with at least three to five authorized sales and repair facilities in Virginia. Winnebago's continuing business activity with CW Ashland has been ongoing for a number of years.

8.      Winnebago's internet web site lists CW Ashland as an authorized retail seller and servicer of Winnebago motor vehicles. CW Ashland is one of at least 5 retail sales locations in Virginia where defendant engages daily in sales and service through its local authorized sales and service agents and representatives.

## JURISDICTION

9.      Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 U.S.C. § 2301 et seq., invoking 28 U.S.C. § 1331, and the amount in controversy is more than $75,000 and is between citizens of different states,

invoking 28 U.S.C. § 1332. This court also has supplemental jurisdiction of the state law claims regarding the same transaction and events pursuant to 28 U.S.C §1367(a).

10.     The RV, which is the subject of this dispute, was acquired by the Plaintiff in Virginia and was defective when acquired. Ineffective repair attempts were made to the RV by Winnebago's authorized agent and representative dealership in Virginia.   The dealership where the relationship of the parties arose is in Virginia.   The warranty obligations of Winnebago were received by the Plaintiff during the purchase of the RV in Virginia.   Winnebago interacted directly with the Plaintiff in Virginia.

## STATEMENT OF FACTS

11.     This case involves a defective 2019 Winnebago ERA motorized recreational vehicle that Winnebago warranted, contracted and agreed to warrant but was not able to repair within a reasonable amount of time and whose warranty and contract of warranty Winnebago breached.

12.     On or about November 27, 2019, relying on the express oral, implied and written warranties from the Defendants, Plaintiff entered into an agreement[2], which was a consumer transaction where the Plaintiff agreed to acquire the RV from Winnebago's retail sales outlet CW Ashland and Defendants contracted and agreed to warrant the vehicle and would repair and replace any defect which it contracted, agreed and warranted against, the goods being a certain 2019 Winnebago recreational vehicle believed to bear VIN # WDAPF4CC4JP586112 ("the

---

2 The terms "agreement" and "contract", as used herein, are not synonymous and are used as those terms are separately defined in the Uniform Commercial Code. Va. Code §8.1A-201(3) & (12). Under §8.1A-201(12) "contract", as opposed to "agreement", means the total legal obligation that results from the parties' agreement as determined by the Uniform Commercial Code as supplemented by any other applicable laws.

RV") , and whose total sales price was $166,112.80.   Plaintiff paid $25,000.00 down on the RV and CW Ashland agreed to accept the balance in monthly payments of $584.97, which began on January 11, 2020.

13.     The RV went into the Winnebago authorized warranty repair shop at CW Ashland about three months later to complete the list of items owed to Plaintiff from her purchase, with a list of four (4) defects to be corrected, including valance hanging, missing outlet cover, broken vent, LP stove not igniting, an inoperative bathroom fan; and items not noted by the dealership, that the RV was difficult to start and missing a second set of keys which was never reimbursed.

14.     Six weeks after the initial service at Camping World, April 27, 2020, the Plaintiff took the RV to Mile One Mercedes Benz of Silver Spring, Maryland because the RV would not stay charged and required a jump start and Plaintiff was instructed to obtain additional keys at her own expense and program them.

15.     On June 23, 2020, the RV was taken back to CW Ashland where it was presented with a list of 6 defects, including refrigerator not cooling, control button for heat defective, entry door screen defective, bathroom entrance molding defective, an inoperative bathroom fan and microwave; and it remained at the dealership for 106 days waiting to be repaired.

16.     Plaintiff returned the subject RV to CW Ashland on November 12, 2020 with additional defect complaints and the RV remained at the dealership for an additional 29 days for repairs to the convertor alarm, electrical outlets, ground fault, microwave, screen, fridge not cooling and bathroom trim.

17.     Since picking up the RV from CW Ashland on December 11, 2020, Plaintiff has noted the following continuing issues with the RV that were not repaired: shore power not connecting, coach lights not functioning and the convertor alarm malfunctioning.

18.     Defendants represented and promised the Plaintiff that the RV was of high quality and free of defects and that it was inspected before leaving the factory, but even though the Plaintiff relied upon that, based on the history of the RV, its many defects, and Plaintiff's experiences and many complaints, Plaintiff believes those representations and promises were false. Had the Plaintiff known the truth, she would not have bought the RV.

19.     Plaintiff acquired the vehicle in reliance on the existence of a warranty and contract of warranty from the Defendants and on joint and several advertising representations and warranties of the Defendants, including but not limited to representations that the subject RV was of high quality, built with good workmanship, lacked defects and malfunctions, and that Defendants would provide Plaintiff with a high level of customer care, service, and repair any defect covered by its warranty, and more. She would later discover through experience, that virtually none of these representations and promises were true.

20.     The purpose of Winnebago's warranty and contract of warranty was to get the RV fixed within a reasonable amount of time and within a reasonable number of repair attempts if a defect arose.   A secondary purpose was to give Plaintiff confidence in the reliability and quality of the RV and to give Plaintiff confidence in the Defendants and the high level of customer care and service they said they would give Plaintiff.

21.     After acquiring the RV, Plaintiff discovered that it did not conform to the agreement, contracts, and representations of the Defendants since it developed continuing

malfunctions, defects and problems, which Defendants failure to repair was an act of deception, fraud, false pretense, and broke its promises to Plaintiff.

22.     After experiencing more than a dozen defects and more than 130 days in the shop over the course of at least four different repair opportunities, with many problems still unrepaired, Plaintiff has lost all faith and confidence in the reliability of this RV, and in the Defendants' abilities to live up to their contracts, agreements, commitments, representations, promises, and warranties.   After experiencing the RV's defects, Plaintiff is convinced that the RV does not operate correctly, was not fixed within a reasonable number of attempts or within a reasonable amount of time and will never operate at the purported level and degree of quality and workmanship that Defendants represented.

23.     The defects in the RV, which were substantial and existed in the materials and workmanship caused by Winnebago, and which substantially impair its value to the Plaintiff, inter alia, include the following:

        a.      Valance hanging;

        b.      missing outlet cover;

        c.      Vent broke;

        d.      LP Stove will not ignite, defective wiring;

        e.      Bathroom fan inoperative;

        f.      Battery;

        g.      Fridge not cooling;

        h.      Control button for heat;

        i.      Entry door screen;

11

j.      Bathroom entrance molding;

k.      Microwave inoperative;

l.      Convertor alarm;

24.     Plaintiff complained to and asked for help from Defendants for the repair of these defects, on at least the following dates: November 27, 2019; December 19, 21, 2019; repeated calls in January & February 2020; March 10, 2020; May 1 & 26, 2020; June 15, 2020 letter emailed to CW Ashland; June 24, 2020; July 8, 2020; July 10, 2020 certified letter to Winnebago; July 15, 16, 21, 29, 2020; and August 18, 2020.

25.     Plaintiff contacted Defendants repeatedly to attempt to resolve her ongoing issues. As a result, Defendants received multiple notices and had multiple opportunities to cure or repair the RV and failed, including the direct Winnebago option of its final opportunity.

## COUNT I
## BREACH OF WARRANTY AND CONTRACT

26.     The allegations and claims of paragraphs 1 through 25 are incorporated as if fully stated herein.

27.     This claim is for breach of express and implied warranties and contract of warranty by Defendants in Virginia.

28.     As a result of the above facts and allegations, including the substantial impairment of the RV's value to Plaintiff, the Defendants, jointly and severally, breached their contract, agreements, and warranties with the Plaintiff, causing her compensatory damages, actions which also were deceptive, fraudulent, and constituted false pretense and false promises.

29.     At all times relevant, CW Ashland was a supplier and merchant and an authorized

12

agent and representative of Winnebago. CW Ashland was authorized by Winnebago to act for it in all aspects related to the sale and warranty repair work performed or attempted on the subject vehicle.   Repair attempts on the RV were by CW Ashland.

30.    In all respects, Plaintiff substantially if not completely performed her obligations under the RV's warranty from Winnebago and Winnebago did not perform its obligations, as set forth herein.

31.    Because of the contract and warranty-covered defects, Plaintiffs contacted Defendants in writing and notified them of the numerous defects, and at Defendants' requests and otherwise delivered the RV to Defendants beginning shortly after the sale.

32.    In addition to the Defendants representing to Plaintiff that the RV lacked defects and was of high quality and reliable, it is believed that Defendants knew or should have known that after the assembly or the RV by Winnebago there would be defects that have to be repaired during the first year of ownership by a retail purchaser, information which was deliberately concealed from buyers such as the Plaintiff.

a.    Furthermore, Defendants deliberately concealed what they knew or should have known about the fact that the defects in Winnebago RVs are so common that it is not unusual for a new RV to require trips to the repair shop every other month during its warranty, and that it was considered (1) Normal for a new Winnebago RV to arrive from the factory and have defects that would have to be repaired before it could be sold; (2) Normal for defects to arise in a new Winnebago RV while it was sitting on the retail sales lot waiting to be sold; (3) Normal for defects to arise during the first year of after a consumer purchased a new Winnebago RV;

13

and (4) Normal for each of those events to require repair work to be attempted on new Winnebago RVs.

33.     When Defendants represented to Plaintiff that repairs would be done if defects occurred, it is believed that it was not a matter of "if" but when, and Defendants therefore deliberately concealed and misrepresented those facts in any of their oral or written advertisements, or representations or literature or discussions with Plaintiff and instead thereby committed fraud, deceit, false pretense and made false promises.

34.     In 2019 and 2020 Plaintiff had numerous telephone calls with Defendants and with other third-party entities regarding the ongoing defects and problems with the RV.

35.     In addition to phone calls, a series of written communications occurred between the parties, with Plaintiff sending and receiving emails while in Virginia.

36.     Plaintiff notified Defendants that she wanted her money back, but Defendants failed to accept a return of the RV or refund her money.

37.     Winnebago's warranty and contract of warranty on this RV proclaims that Winnebago warrants to the owner for a period of one (1) year that defects in materials and workmanship will be repaired or replaced.

38.     There are two basic portions of an RV: the chassis and "the box" which is the body structure mounted on the chassis by the RV manufacturer. Despite Winnebago's warranty against defects, the RV's "box," or body structure, was plagued with numerous and substantial defects in materials and workmanship that are the fault of Winnebago, including the materials and components selected by Winnebago in the construction of the subject RV, which were also plagued with numerous substantial defects.   Having selected those materials and components,

14

the defects in them are the fault of Winnebago.

39.     Winnebago promised the Plaintiffs that a "repair or replacement" would be provided to her if a defect was found. Even though more than a dozen defects were found, and Winnebago was given numerous chances to remedy the defects, Winnebago failed to repair all the defects in the RV and failed to replace the RV, despite numerous complaints, opportunities, and multiple durations of time to comply with Winnebago's obligation.

40.     Despite Winnebago's obligations, when the Plaintiff complained of the inability of Defendants to repair the vehicle's defects, Defendants did not repair, replace, or repurchase the subject vehicle.

41.     Prior to filing this case, including on July 10, 2020, and on one or more other dates, Plaintiff provided notice to Defendants about their acts of deception, fraud, false pretense, and false promise to Plaintiff and failures to live up to their warranties, agreements and contract of warranty.

42.     As a result of the above, each Defendant breached its express and implied warranties, contract of warranty and/or agreements and committed one or more acts of deception, fraud, false pretense, and false promise to Plaintiff.

43.     Instead of performing as represented, Defendants did not repair all defects in the vehicle once and for all time. In short, the defects were not repaired, Plaintiff lost all confidence in the reliability and quality of the RV, and Plaintiff lost all confidence in the Defendants.

44.     As a result, Winnebago's warranty and contract of warranty failed of its essential purpose and any limitations contained within the warranty and contract of warranty are null and void and Plaintiff is entitled to all applicable legal and equitable remedies in law.

45.     In addition, any limitations contained within the warranty and contract of warranty are null and void, without consideration and failed for lack of consideration, and Plaintiff is entitled to all applicable legal and equitable remedies in law.

46.     Through its advertising and otherwise, Defendants each represented that the RV was fit for the purpose for which it was designed, that it was a safe and suitable vehicle for its intended designed use, reliably operable for private transportation and recreational use and Plaintiff acquired the vehicle in reliance upon the belief that Defendants possessed a high degree of skill and judgment.

47.     Through its advertising and otherwise, Defendants each represented that the recreational vehicles which it sold were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used, and the Plaintiff relied on such, but the RV was not of merchantable quality and that was an act of deception, fraud, false pretense, and false promise to the Plaintiff.

48.     These defects, malfunctions, problems, and non-conformities of the RV severely and substantially impaired its use, safety, and value to the Plaintiff and that was an act of deception, fraud, false pretense, and false promise to the Plaintiff.

49.     The failure of Defendants to timely fix the vehicle's defects has caused the Plaintiff to lose confidence in the reliability of the RV and in the ability of Defendants to repair the RV's defects and that was an act of deception, fraud, false pretense, and false promise to the Plaintiff.

16

50.     The Plaintiff provided each Defendant with a reasonable number of opportunities and duration of time to repair the subject vehicle, but Defendants have each neglected, failed, refused or otherwise been unable to do so.

51.     As a result of the above facts, Defendants each breached their agreements, representations, promises, warranties and contract of warranty with respect to the subject vehicle.

52.     One or more of the defects, malfunctions, problems, and non-conformities with the RV were covered under the terms of Defendants' agreements, representations, promises, warranties and/or contract of warranty, and Defendants each failed to repair the vehicle's defects in a reasonable amount of time, thereby diminishing the use, safety and value of the vehicle and that was an act of deception, fraud, false pretense, and false promise to the Plaintiff.

53.     Defendants had notices of their breaches on contract, breaches of Winnebago's express and implied representations, promises, warranties, contract of warranty and agreements and of the defective condition of the RV within a reasonable time.

54.     The Plaintiff suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failures of each Defendant to repair, replace the vehicle, or refund its price in an amount that shall continue to increase, including insurance, title, taxes, loan interest and more, and that was an act of deception, fraud, false pretense, and false promise to the Plaintiff.

55.     Based upon CW Ashland's breach of contract by selling to Plaintiff an RV that is substantially impaired to her and which she has revoked her acceptance of pursuant to Virginia Code §8.2-608, and Winnebago's breach of warranties and contract obligations, Plaintiff is entitled to statutory and other damages, remedies, and relief as deemed proper and lawful by the

Court, for more than $50,000 and in such amount as may be proven at trial, plus attorney fees and costs.

## COUNT II
## MAGNUSON MOSS WARRANTY ACT
## 15 U.S.C.   § 2301
## (Against Winnebago Only)

56.     The allegations and claims of paragraphs 1 through 55 are incorporated as if fully stated herein.

57.     This claim is for breach of express and implied warranties, contract of warranties, and Winnebago's violation of its obligations under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., including but not limited to its obligations to comply with its warranties and contract of warranty and to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and its applicable regulations.

58.     The RV is a "consumer product" within the meaning of the Warranty Act.

59.     Plaintiff is a consumer within the meaning of the Warranty Act.

60.     Winnebago is a warrantor and supplier within the meaning of the Warranty Act.

61.     Winnebago provided a written warranty on the RV within the meaning of the Warranty Act.

62.     At 15 U.S.C. § 2302(a), the Warranty Act requires, among other things, that a written warranty is required to "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty" and "a statement of what the consumer must do" and "the period of time within which ... the warrantor will perform any

18

obligations under the warranty" and "the elements of the warranty in words or phrases which would not mislead," among other things.

63.     The Winnebago written warranty, however, fails to comply with the requirements of the Warranty Act.

64.     As a result of the above, among other things, Winnebago breached its obligations under the Warranty Act and its applicable disclosure and other regulations and that was an act of deception, fraud, false pretense, and false promise to Plaintiff.

65.     In addition, as a result of the above, Winnebago failed to comply with its warranty obligations and breached its warranty obligations to Plaintiff and to Plaintiff's injury and damage.

66.     As a result of the above, Winnebago breached its obligations to make its warranty term disclosures and its actions in full compliance with all the provisions of the Warranty Act and the applicable Code of Federal Regulations.

67.     As a result of the above, Winnebago is in violation of the Warranty Act and the Plaintiff is entitled to statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each violation that may be proven at trial, and attorney fees and costs.

## COUNT III
## VIRGINIA CONSUMER PROTECTION ACT
### VA Code § 59.1-200(5),(6),(7) and (14)

68.     The allegations and claims of paragraphs 1 through 67 are incorporated as if fully stated herein.

69.     The sale of the RV to Plaintiff was a "consumer transaction" as defined in §59.1-198 of the Code of Virginia; the RV constitutes "goods" as defined in §59.1-198 of the Code of Virginia; Defendants were "supplier(s)" as defined in §59.1-198 of the Code of Virginia; and the Plaintiff is a "person" as defined in §59.1-198 of the Code of Virginia.

70.     As a result of the above, among other things, one or more acts, omissions, or practices were committed by Defendants that violated §§59.1-200 (5),(6),(7), and (14) were deceptive, fraudulent, a false pretense, a false promise, or misrepresentations, including, but not limited to:

  a.    Representing that the subject of a consumer transaction has performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;

  b.    Representing that the subject of a consumer transaction is of a particular standard or quality when it is not and the supplier knows or should reasonably know that it is not;

  c.    Representing that the transaction involves or does not involve a warranty and contract of warranty, a disclaimer of warranties, or other rights, remedies or obligations when the representation was false, and the supplier knows or should reasonably know that the representation is false;

  d.    Representing that the supplier can deliver or complete the subject of the consumer transaction within a stated period of time when the supplier knows or should reasonably know the supplier could not;

20

e.       Including one or more unconscionable and unreasonable terms in the written warranty and contract of warranty document(s);

f.       Stalling and delaying the performance of a legal obligation;

g.       Representing that defects have been repaired when in fact they were not;

h.       Representing the supplier can deliver or complete the subject of a consumer transaction within a stated period of time when the supplier knows or reasonably should know the supplier could not;

i.       Soliciting a person to enter into a contract or agreement that contains terms that are oppressively one-sided or harsh and in which the terms unduly limit the person's remedies, and in which the price is unduly excessive, and there was unequal bargaining power that let the person to enter into the contract or agreement unwillingly or without knowledge of the terms of the contract or agreement;

j.       Refusing to recognize the rights of buyers under the Uniform Commercial Code when the only remedy afforded by its limited warranty failed of its essential purpose;

k.       Knowingly distributing goods for retail sale to consumers that it knows or should know are defective without disclosing such;

l.       Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to be defective without disclosing such;

m.     Knowingly distributing goods for retail sale to consumers that it knows or should know will become defective after receipt by the retail seller and before purchase by the retail buyer without disclosing such;

n.     Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to become defective after receipt by the retail seller and before purchase by the retail buyer without disclosing such;

o.     Knowingly distributing goods for retail sale to consumers that it knows or should know will become defective during the first year after purchase by the retail buyer without disclosing such;

p.     Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to become defective during the first year after purchase by the retail buyer without disclosing such;

q.     Failing to make replacement of warranted defective parts available to a consumer within a reasonable time; and,

r.     Failing to make a refund of the cost of warranted goods when it has failed to make replacement of warranted defective parts available to a consumer within a reasonable time.

71.     As a result of the above, Defendants willfully committed one or more acts, omissions, or practices that were a deception, fraud, false pretense, and false promise, before, during and after a consumer transaction, and the Plaintiff relied on Defendants' representations to her detriment, in that the representations were key factors in the Plaintiff's decision to purchase the RV.

22

72.     Based upon Defendants' violations of the Virginia Consumer Protection Act, Plaintiff is entitled to her actual damages, or $500, whichever is greater, together with an award of treble damages and legal fees upon a finding of willfulness, or $1000, whichever is greater, pursuant to § 59.1-204(A). In the alternative, the Defendants' actions were unintentional but violate this statute entitling her to restitution and legal fees under Va. Code §59.1-207.

Based upon Defendant's violations of the Virginia Consumer Protection Act, the Plaintiff is also entitled to an award of her attorneys' fees and costs pursuant to § 59.1-204(B).

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, or as deemed proper and lawful by the Court as follows.

1.      On Count I, statutory and other compensatory damages, remedies, and relief as deemed proper and lawful by the Court, in amount that exceeds $50,000.00 and in such greater amount as may be proven at trial.

2.      On Count II, statutory and other compensatory damages, remedies and relief as deemed proper and lawful by the Court, for each violation by Winnebago that may be proven at trial.

3.      On Count III, statutory, treble and compensatory damages, remedies, and relief as deemed proper and lawful by the Court, for each violation by each Defendant that may be proven at trial.

4.      Or, in the alternative to the damages set forth in the prayer above on any appropriate claim, as proven by the evidence and any legal or equitable claim allowed by law for repurchase, rescission, or revocation of acceptance plus all damages and statutory remedies and

relief as deemed proper, equitable and lawful by the Court, for each violation which may be proven at trial.

5.      On each claim, the Plaintiff demands judgment for attorney fees and costs, pre and post-judgment interest, and any such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**SANDRA SALAN,**

_____/s/_____
John Cole Gayle, Jr., Esq.
THE CONSUMER LAW GROUP, P.C.
1508 Willow Lawn Drive, Ste. 220
Richmond, VA 23230
804-282-7900 - Phone
804-673-0316 - Fax
jgayle@theconsumerlawgroup.com

Ronald L. Burdge, Esq., *pro hac pending*
BURDGE LAW OFFICE
8250 Washington Village Dr.
Dayton, Ohio 45458
937-432-9500 - Phone
937-432-9503 - Fax
Ron@RVLemonlaw.com

Dated:   February 19, 2021